No. 2164.—CITIZENS' BANK OF LOUISIANA *v.* PAYNE & GILMAN. J. T. MICHEL, Sheriff, Garnishee.

A garnishee must stand aloof from the litigating parties, and not lend himself to the advantage of either party.

An *ex parte* order of court directing the payment of money does not bind a party entitled to the proceeds of the sale of property sold under execution ; nor will it protect the sheriff.

The sheriff cannot pay out funds in his hands derived from the sale of property under execution which is subject to conflicting claims on his own authority.

Where it is shown that the sheriff had knowledge of the superior mortgage claims to the funds in his hands arising from the sale of property under execution, and he pays over the funds to another claimant of inferior grade, he becomes personally and officially liable to the creditor of superior rank for the amount thus illegally paid.

APPEAL from the Second Judicial District Court, parish of Jefferson. *Pardee*, J. *B. C. Elliott* and *A. Pitot*, for plaintiff and appellant. *A. Cazabat* and *W. S. Scott*, for defendants and appellees.

TALIAFERRO, J. This is an action brought against the sheriff of the parish of Jefferson, to render him liable to the plaintiff for an alleged misapplication of certain moneys which came into his hands as sheriff, and to which the plaintiff lays claim. Judgment was rendered in the court below in favor of the sheriff, and the plaintiff appeals.

• Delachaise, as vendor to Thompson of two lots of ground in the parish of Jefferson, to enforce payment of the price, sued out execu-

tory process under his mortgage, having the pact *de non alienando*, and caused the property to be seized in possession of Payne, the vendee of Thompson. After the usual proceedings were taken the two lots were sold for cash, and after paying off the vendor and first mortgagee there remained in the sheriff's hands $1663 79 subject to subsequent mortgages, of which the judicial mortgage in favor of the Citizens' Bank took precedence, the vendor's mortgage being extinguished by payment.

The attorney of the bank, who was also attorney for Gettzinger, a judgment creditor, filed a rule in the District Court on the twentieth of July, 1867, and an order followed directing the sheriff to show cause why he should not distribute the money remaining in his custody, first to the Citizens' Bank one thousand dollars, with interest and costs, in right of their judgment against Payne and the resulting general mortgage. Secondly, to Joseph Gettzinger seven hundred and sixty-one dollars and thirty-one cents, with interest and costs to discharge his judgment and judicial mortgage.

On the twenty-ninth of November following this rule, upon the motion of the attorney of the bank, was withdrawn. As it is important to notice the circumstances under which the rule was withdrawn, and in connection therewith the events which immediately succeeded, it will be proper to recur to such parts of the testimony as throw light upon this branch of the subject. The testimony of the bank's attorney, who withdrew the rule, was taken under commission. He deposed as follows:

" On the trial of a rule taken by the Citizens' Bank of Louisiana in the suit of Delachaise *v.* Thompson, on the sheriff, to show cause why he should not pay to said bank the amount of its judgment against Payne, out of the funds in his hands, I was convinced by the argument of my adversary that the most proper course was to take a *fi. fa.* on the judgment in favor of the bank, and seize the money in the sheriff's hands. I then informed the court in presence of Mr. Michel, the sheriff, that I would discontinue my rule in the case of Delachaise, and that I would immediately take a *fi. fa.* in the case of the Citizens' Bank *v.* Payne & Gilman, and I then called the attention of said sheriff in open court, in the presence of the judge on his bench and the clerk at his desk, to the notice which I then gave him. I then took a *fi. fa.* in the case of the Citizens' Bank *v.* Payne & Gilman, and drew a petition with interrogations addressed to Mr. Michel. I discontinued my former motion, and handed the petition and interrogations to Mr. Michel at his desk in court, requesting him to accept service thereof in order to save costs. Mr. Michel received the papers, took his pen in hand, and began to write the acceptance of service on the back of the petition. He had already written a word or two when he was called out from the corridor opening on the court room. I am not sure I recognized the person. He left the papers on his desk, telling me, ' my lawyer calls me, let me go and see him.' . He left the room. I waited, and then I went out to look for him. I put the papers in the hands of the coroner,

with request to search for him, and at nearly three o'clock P. M., upon being informed that he had left Carrollton long ago, I came back to New Orleans, after having left directions to go and serve him at his domicile."

It is elsewhere in the record shown by the evidence that immediately after the rule was withdrawn the sheriff was called upon in open court, and soon after called outside by the attorney of Payne, and required to pay over the balance of the funds for Payne. This the witness states was done before the opposite counsel took any steps whatever for the bank. The money was paid over to Payne's attorney and a receipt taken. It is shown that on the back of the petition referred to by the testimony of the bank's attorney, the words " service accepted this 29 ——" appear, and it is proved that they are in the handwriting of the sheriff. In answer to the rule taken upon him by the Citizens' Bank (the rule which was withdrawn), the sheriff says: " Respondent denies any knowledge of John Payne's interest in the funds remaining in his hands from the sale effected in the above entitled suit (Delachaise v. Thompson), and requires strict proof of the same ; says that he holds the balance of the funds, in his official capacity, subject to the order of the defendant or to the order of the honorable court." The sheriff, in his own testimony, states that he knew of the Citizens' Bank mortgage by the certificate of mortgage, and he acknowledged that the words " service accepted this 29 ——," written on the petition and interrogations, to be in his handwriting.

The sheriff, we think, was clearly at fault. He knew of the bank's judicial mortgage and also of that of Gettzinger. He knew that both these creditors were entitled to be paid from the money in his hands, the proceeds of the mortgaged property, before the residue, if any, could go to Payne. He had ignored, in his answer to the rule, the pretensions of Payne to an interest in the funds remaining in his custody, and declared that he held them subject to the order of the defendant, Thompson, or of the court. He was the legal custodian of the funds subject to the claims of creditors having mortgage rights, a mere stake holder, and under the state of facts existing, unauthorized to pay out these funds without an order of court. He is not shielded in making the payment to Payne by the withdrawal of the rule taken upon him by the bank, because he knew that it was no abandonment by the bank of its rights ; on the contrary, he knew that the withdrawal was made for the purpose of directly and immediately pursuing their claims in the form of execution and garnishment, and he was in the act of waiving service of the substituted process when he was called off by his lawyer. In answer to a question as a witness, propounded, as it seems, by the attorney of Payne, he said : " No service whatever was served on me before I paid you; but I heard Mr. Pitot say he was not done with the case."

We think he has made himself liable to the plaintiff from the course he has pursued. The business of a garnishee is to stand aloof from the litigatory parties, and to bind himself to the separate interest and advantage of neither. He was entirely without right, under the circumstances of the case, to give the funds in his hands any other destination than that intended by law, and to be directed by order of court.

It was held by this court in the case of Dellassic v. Cenas and others, 4 N. S. 509, that an ex parte order of court .directing the payment of money, does not bind a party entitled to the proceeds of sale of property sold under execution, nor protect the sheriff. A fortiori the sheriff cannot pay out funds subject to conflicting claims on his own authority.

Numerous authorities are to the same effect in regard to the distribution of the proceeds of mortgaged property. 5 Rob. 272; 7 R. 73 and 303; 7 An. 123; 8 An. 464; 14 An. 654.

We are not satisfied from the evidence in this case, that the money was actually paid over by the sheriff. We think the plaintiff entitled to a reversal of the judgment.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that the plaintiff, the Citizens' Bank of Louisiana, have and recover from John T. Michel, the garnishee in this case, in his individual capacity and in his official capacity of sheriff, the sum of one thousand dollars, with interest thereon from the nineteenth of January, A. D. 1861, until paid, at the rate of five per cent. per annum, and that the defendant and appellee pay costs in both courts.

Rehearing refused.